**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     Case No.: |
| | ) |
| BALDREE INSURANCE AGENCY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION

Plaintiff, Westport Insurance Corporation ("Westport") by and through its attorneys, and for its Complaint for declaratory judgment and rescission against Defendant, Baldree Insurance Agency ("Baldree") states as follows:

## NATURE OF ACTION

1.     This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.  Plaintiff Westport seeks a declaratory judgment that Westport Policy No. WED4IL009298208 (attached as Exhibit A) does not provide coverage for the lawsuit filed against Baldree by its former client, GAB Secret Acres Horse Training Center, Inc. ("GAB"), *GAB Secret Acres Horse Training Center, Inc. v. Baldree Insurance Agency Company, Inc*., *et al*. Case No. 17-L-90, pending in the Twentieth Judicial Circuit in St. Clair County, Illinois (the "GAB Lawsuit").

2.      Plaintiff Westport also seeks rescission of Westport Policy No. WED4IL009298210 and Westport Policy No. WED4IL009298211 (attached as Exhibits B and C, respectively), and that these policies are deemed void ab initio.

3.      As a result of the dispute between Westport and Baldree regarding the applicability of the Westport Policies to the GAB Lawsuit, there is an actual case or controversy between the parties.

## PARTIES

4.      Plaintiff Westport is an insurance corporation that is organized and exists pursuant to the laws of Missouri, with its principal place of business in Kansas City, Missouri.

5.      Defendant, Baldree, is an Illinois corporation licensed by the State of Illinois and engaged in the procurement and placement of insurance as an independent agent with its principal place of business located in Belleville, Illinois.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the state of Missouri and a citizen of the state of Illinois.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant resides in Belleville, Illinois and because a substantial part of the events giving rise to this cause of action occurred in this district.

## FACTUAL BACKGROUND

### Underlying Litigation and Tender to Westport

8.      GAB filed a lawsuit against Baldree and several other entities and individuals on

April 11, 2017 (the "GAB Lawsuit").  The original complaint filed in the GAB Lawsuit is

attached as Exhibit D.

9.      The GAB Lawsuit alleges the following:

a.      Baldree is an Illinois corporation engaged in the procurement and

placement of insurance as an independent agent.  Baldree acted as an

insurance agent for GAB, a business for training and boarding horses, and

placed commercial property, commercial liability and extended coverage

with Markel Insurance Company Inc. ("Markel") through Risk Placement,

who acted as a broker, for annual policies from December 2013 through

December 2016.

b.      GAB paid annual premiums in full for each of the policy periods from

December 2013 through December 2015 by check payable to Markel.

c.      Baldree allegedly forged the endorsement of GAB on the check made

payable to Markel for the 2014-2015 policy without GAB's knowledge

and deposited the check into Baldree's own bank account.

d.      Baldree also allegedly forged GAB's principal's signatures to premium

finance agreements with Imperial PFS Corporation ("IPFS"), an insurance

premium finance company, using a Baldree post office address as the

address of Baldree for the 2013-2014 and 2014-2015 policy years, in

amounts in excess of the actual premiums charged and received loan

proceeds from IPFS for Baldree's own benefit without GAB's knowledge. The GAB Lawsuit asserts that Baldree presumably paid the monthly installments to IPFS for the 2013-2015 policy years without GAB's knowledge.

e.      GAB paid Baldree $2,000 in January 2016 toward the $6,983.00 premium for the December 2015 - December 2016 policy.  That same month Baldree purportedly forged GAB's principal's signature again to fund another premium finance agreement with IPFS for the 2015-2016 policy and received nearly $5,000 from IPFS without GAB's knowledge. Baldree paid the full $6,983.00 premium to Markel for the 2015-2016 policy.

f.      No payment was made under the premium finance agreement for the 2015-2016 policy, and IPFS sent a cancellation notice to Markel and GAB on February 1, 2016 with a cancellation date of February 25, 2016, and another cancellation notice on March 10, 2016 with a cancellation date of March 28, 2016.

g.      On March 8, 2016, GAB formally retained Thomas Mabry as its new insurance agent in place of Baldree.

h.      On April 30, 2016, a hail storm caused over $90,000 in damages to the insured property, and Markel denied the claim based on the cancellation of the policy for non-payment of the premium.

See Ex. D.

10.     The GAB Lawsuit asserts that as a direct and proximate result of Baldree's actions, a default occurred under the terms of the premium finance agreement when no payment was made to IPFS, resulting in the policy with Markel being cancelled by IPFS and Markel and causing GAB to be uninsured on April 30, 2016 when a hail storm caused substantial damage to property that was supposed to be insured.  GAB seeks judgment in excess of $50,000. See Ex. D.

11.     Baldree was served with the GAB Lawsuit on April 12, 2017.  The executed summons is attached as Exhibit E.

12.     Baldree first provided notice of the GAB Lawsuit to Westport on December 19, 2019. The notice of loss is attached as Exhibit F.

13.     Westport issued a letter to Baldree dated February 26, 2020 acknowledging receipt of the GAB Lawsuit and agreed to defend the GAB Lawsuit under Westport Policy No. WED4IL009298208 subject to several reservations.

**<u>Background of Policy Applications</u>**

14.     On October 25, 2018 David Baldree on behalf of Baldree completed an application for an Insurance Agency Professional Liability policy from Westport, to be issued for the November 12, 2018 to November 12, 2019 policy period (the "2018 Policy Application"). The 2018 Policy Application is attached as Exhibit G.

15.     Question 22 of the 2018 Policy Application asks: "Actual claims: Have any breach of privacy claims or errors and omissions or incidents been made against the agency or any of its past or present personnel or predecessor agency, within the last 5 years."  Baldree marked "No" in response to question 22.  See Ex. G.

16.     Baldree submitted an auto renewal application for an insurance agency professional liability policy from Westport, to be issued for the November 12, 2019 to November

12, 2020 policy period (the "2019 Policy Application").  The 2019 Policy Application is attached as Exhibit H.

17.    The 2019 Policy Application states that Westport would provide the renewed policy for the November 12, 2019 to November 12, 2020 policy period "[b]ased on [its] reliance of the information contained in [Baldree's] most recent application on file."  See Ex. H.  The most recent application on file at the time was the 2018 Policy Application.

## The Westport Policies

18.    Westport issued an Insurance Agents Professional Liability Policy to Baldree for the policy period November 12, 2016 to November 12, 2017 (the "2016 Policy").  Ex. A

19.    The 2016 Policy provides:

**I**.     **COVERAGE**

A.     We will pay on behalf of the INSURED all sums in excess of the DEDUCTIBLE that the INSURED becomes legally obligated to pay as DAMAGES caused by WRONGUL ACTS resulting in any CLAIM first made against the INSURED during the POLICY PERIOD and reported in writing to us or the producing agent as soon as practicable.

See Ex. A (emphasis added).

20.    The 2016 Policy also contains a "REPORTING AND NOTICE" section which provides:

INSURED'S duties in the event of any CLAIM or any POTENTIAL CLAIM:

****

B.      The INSURED shall:

1.      provide written notice of any CLAIM to us or the producing agent

shown on the Declarations <u>as soon as practicable</u>.

See Ex. A. (emphasis added).

21.     The 2016 Policy COVERAGE section further states:

C.      Notwithstanding Paragraphs A. or B. above, this **COVERAGE** section

does not provide coverage for any CLAIM, if at the time <u>prior to the effective</u>

<u>date of this Policy</u>, or any Employers Reinsurance Corporation or Westport

Insurance Corporation policy this policy replaces, if you or any owner, officer or

partner of the NAMED INSURED:

1.      <u>knew of a CLAIM</u> or POTENTIAL CLAIM

See Ex. A. (emphasis added).

22.     The 2016 Policy defines WRONGFUL ACT in pertinent part as follows:

1.      any negligent, act, error, or omission of an INSURED in rendering

PROFESSIONAL SERVICES or OTHER RELATED SERVICES for

others;

23.     The 2016 Policy defines PROFESSIONAL SERVICES as:

1.      services rendered as a managing general insurance agent, general

insurance agent, insurance agent, or insurance broker;

2.      services rendered as an insurance consultant, including but not limited to,

insurance consulting connected with employee benefit plans;

3.    premium financing services provided by the NAMED INSURED to the NAMED INSURED'S clients for insurance products placed through the NAMED INSURED'S agency;

4.    loss control, risk management, or anti-fraud services rendered in connection with insurance placed through the NAMED INSURED;

5.    services as a registered representative rendered in connection with the sale and servicing of variable life and variable annuity products; or

6.    acting as a countersigning agent for out-of-state insurance agencies on policies issued within the state of domicile of the INSURED.

See Ex. A.

24.    The 2016 Policy contains the following exclusions:

**V.    EXCLUSIONS**

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

****

E.    **FRAUDULENT ENTITY**. Or in connection with any FRAUDULENT ENTITY or any entity that the Insured knew or, if industry standard due diligence had been performed, reasonably should have known is a legally formed entity that is used as a device to commit fraud or other unlawful acts.

****

H.    **INTENTIONAL ACTS**. Any CLAIM for intentional acts, including but not limited to, acts of dishonesty, fraud, criminal conduct, malice, or

assault and battery or intentional BREACH of PERSONAL DATA by any INSURED. CLAIM EXPENSES are recoverable by us against those INSUREDS who, by final judgment, order, or determination in a SUIT are found to have committed such intentional acts. CLAIM EXPENSES are also recoverable by us against those INSUREDS who, by their written or oral admission, committed such intentional acts. However, this exclusion does not apply to those INSUREDS who do not personally participate in or ratify the acts identified above and who notify us once such acts has been discovered.

****

L.    **PERSONAL PROFIT OR PROPRIETARY INFORMATION.**

1.    Any INSURED having gained, in fact, any personal profit or advantage to which he or she was not legally entitled; or

2.    any INSURED's misappropriation or unauthorized use of trade secrets or other proprietary information.

See Ex. A.

25.    Westport issued an Insurance Agents Professional Liability Policy to Baldree for the policy period November 12, 2018 to November 12, 2019 (the "2018 Policy").  Ex. B.

26.    Westport also issued an Insurance Agents Professional Liability Policy to Baldree for the policy period November 12, 2019 to November 12, 2020 (the "2019 Policy").  Ex. C.

27.    The 2018 Policy and the 2019 Policy both contain a section titled " XXIII.  Entire Agreement" which provides that the 2018 Policy and the 2019 Policy are "issued in reliance upon the truth and accuracy of such representations which are material to our issuance of [the]

Polic[ies]," referencing the most recent applications submitted by Baldree, which were the 2018

Policy Application and 2019 Policy Application, respectively.  See Exs. B and C.

**COUNT I**
**RESCISSION**
**(The 2018 and 2019 Policies are Rescinded and are Void Ab Initio)**

28.     Plaintiff Westport repeats and incorporates the allegations contained in

Paragraphs 1 - 27 of the Complaint as though fully set forth herein.

29.     At the time the 2018 and 2019 Policy Applications were executed the GAB

Lawsuit, which was served on Baldree on April 12, 2017, was pending against Baldree.

30.     The 2018 and 2019 Policy Applications were both executed after April 12, 2017

and within five years after the filing and service of the GAB Lawsuit upon Baldree.

31.     Baldree marked "No" in response to Question 22, of the 2018 and 2019 Policy

Applications which asked Baldree whether any breach of privacy claims or errors and omissions

or incidents been made against the agency or any of its past or present personnel or predecessor

agency, within the last 5 years.

32.     Baldree made a material misrepresentation when it marked "No" in response to

Question 22 of the 2018 and 2019 Policy Applications as there was a lawsuit made against

Baldree within the last 5 years from the dates of execution of the 2018 and 2019 Policy

Applications.

33.     Westport relied on the information in the policy applications in order to issue the

2018 and 2019 Policies.

34.     Had Baldree disclosed the GAB Lawsuit on its 2018 and 2019 Policy

Applications, Westport would not have issued the 2018 and 2019 Policies or issued the said

policies with different policy terms, deductibles, and/or premiums.

35.     As Baldree made material misrepresentations on the 2018 and 2019 Policy Applications, the 2018 and 2019 Policies are to be rescinded and deemed inapplicable to the GAB Lawsuit.

## COUNT II
## DECLARATORY JUDGMENT
**(There is no coverage for the GAB Lawsuit under the 2016 Policy based on Late Notice)**

36.     Westport repeats and incorporates by reference Paragraphs 1 - 35 as if fully set forth herein.

37.     The GAB Lawsuit was filed on April 11, 2017.  See Ex. D.

38.     An executed summons indicates that Baldree was served on April 12, 2017.  See Ex. E.

39.     Baldree provided notice of the GAB Lawsuit to Westport on December 19, 2019. See Ex. F.

40.     The 2016 Policy provides that Baldree is to provide notice of a Claim "as soon as practicable."  See Ex. A.

41.     By providing notice of the GAB Lawsuit over 2.5 years after being served with the GAB Lawsuit, Baldree did not provide notice "as soon as practicable" in order for the GAB Lawsuit to be covered under the 2016 Policy.

42.     Westport seeks a declaration that the 2016 Policy does not provide coverage for the GAB Lawsuit due to Baldree's failure to provide notice of the GAB Lawsuit in accordance with the 2016 Policy notice provisions.

**COUNT III**
**DECLARATORY JUDGMENT**
**(There is no coverage for the GAB Lawsuit under the 2016 Policy**
**based on Prior Knowledge**

43.     Westport repeats and incorporates by reference Paragraphs 1 - 42 as if fully set forth herein.

44.     The GAB Lawsuit asserts the premium finance company issued a cancellation notice to Markel and GAB on February 1, 2016 and March 10, 2016.  See Ex. D. at ¶¶ 15, 19.

45.     The GAB Lawsuit asserts that Baldree had "knowledge of the March 10, 2016 cancellation notice."  See Ex. D. at ¶ 35.

46.     The GAB Lawsuit asserts that on March 8, 2016 GAB formally retained Thomas Mabry as its new insurance agent in place of Baldree.  See Ex. D. at ¶ 18.

47.     The insuring agreement for the 2016 Policy provides that there is no coverage "for any Claim, if at the time prior to the effective date of this Policy, or any Employers Reinsurance Corporation or Westport Insurance Corporation policy this Policy replaces, you or any owner, officer or partner of the Named Insured: 1. knew of a Claim or Potential Claim."  The 2016 Policy states that "Potential Claim means that an Insured has become aware of a proceeding, event, or development, which could in the future result in the institution of a Claim against an Insured."  See Ex. A.

48.     The 2016 Policy incepted on November 12, 2016.  See Ex. A.

49.     As Baldree was aware that GAB was replacing Baldree as an agent and that Baldree's client, GAB, received cancellation notices from Markel for the policy Baldree was required to procure, Baldree became aware of a development which could in the future result in the institution of a Claim against Baldree.

12

50.     Westport seeks a determination that there is no coverage for the GAB Lawsuit under the 2016 Policy based on Baldree's prior knowledge of a Potential Claim.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(There is no coverage for the GAB Lawsuit under the 2016 Policy because Consumer Fraud Does Not Constitute a Professional Service**

51.     Westport repeats and incorporates by reference Paragraphs 1 - 50 as if fully set forth herein.

52.     The 2016 Policy insuring agreement provides coverage for damages caused by "Wrongful Acts."  The 2016 Policy defines Wrongful Act, in pertinent part, as "any negligent act, error, or omission of an Insured in rendering Professional Services or Other Related Services for others."

53.     The definition of Professional Services includes "premium financing services provided by the Named Insured to the Named Insured's clients for insurance products placed through the Named Insured's agency."

54.     The first count against Baldree is for consumer fraud and deceptive practices, and alleges that Baldree "forged the signature of the principal of GAB to finance agreements with IPFS…for amounts in excess of the actual premiums," using Baldree's address as that of the insured and received loan proceeds "for its own benefit."  Ex. D., ¶ 24.

55.     Consumer fraud does not constitute a Professional Service under the 2016 Policy, and therefore does not trigger the insuring agreement of the 2016 Policy.

56.     Westport seeks a determination that there is no coverage for the GAB Lawsuit because the GAB Lawsuit seeks damages for Consumer Fraud, which is not a Professional Service and in turn not a Wrongful Act under the 2016 Policy.

**COUNT V**
**DECLARATORY JUDGMENT**
**(There is no coverage for the GAB Lawsuit under the 2016 Policy based on the Fraudulent Entity Exclusion**

57.     Westport repeats and incorporates by reference Paragraphs 1 - 56 as if fully set forth herein.

58.     The 2016 Policy contains a Fraudulent Entity exclusion which precludes coverage for a Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from… E. Fraudulent Entity.  Or in connection with any Fraudulent Entity or any entity that the Insured knew or, if industry standard due diligence had been performed, reasonably should have known is a legally formed entity that is used as a device to commit fraud or other unlawful acts."  See Ex. A.

59.     The GAB Lawsuit asserts that Baldree is an entity which was used as a device to commit fraud.  See Ex. D.

60.     The GAB Lawsuit asserts Baldree forged GAB's signature to premium finance agreements in amounts in excess of the actual premiums charged to GAB for Baldree's own benefit, and failed to make payment under one of the premium financing agreements.  See Ex. D.

61.     Westport seeks a determination that coverage is precluded for the GAB Lawsuit based on the Fraudulent Entity exclusion.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(There is no coverage for the GAB Lawsuit under the 2016 Policy based on the Intentional Acts Exclusion**

62.     Westport repeats and incorporates by reference Paragraphs 1 - 61 as if fully set forth herein.

63.     The 2016 Policy contains an Intentional Acts exclusion which precludes coverage for "any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from…[a]ny Claim for intentional acts, including but not limited to, acts of dishonesty, fraud, criminal conduct, malice, or assault and battery, or intentional Breach of Personal Data by any Insured.  Claim Expenses are recoverable by us against those Insureds who, by final judgment, order, or determination in a Suit are found to have committed such intentional acts.  Claim Expenses are also recoverable by us against those Insureds who, by their written or oral admission, committed such intentional acts.  However this exclusion does not apply to those Insureds who do not personally participate in or ratify the acts identified above and who notify us once such act has been discovered."  See Ex. A.

64.     The GAB Lawsuit asserts that Baldree engaged in intentional and fraudulent acts.

65.     The count for consumer fraud and deceptive practices explicitly asserts "[a]s a direct and proximate result of the willful and intentional acts of the Defendant, Baldree," GAB suffered harm.  Ex. A. ¶ 27.

66.     Westport seeks a determination that there is no coverage for the GAB Lawsuit under the 2016 Policy pursuant to the Intentional Acts Exclusion.


**COUNT VII**
**DECLARATORY JUDGMENT**
**(There is no coverage for the GAB Lawsuit under the 2016 Policy based on the Personal Profit Exclusion**

67.     Westport repeats and incorporates by reference Paragraphs 1 - 66 as if fully set forth herein.

68.     The 2016 Policy has a "Personal Profit" exclusion which precludes coverage for "any Claim based upon, arising out of, attributable to, or directly or indirectly resulting from…

"[a]ny Insured having gained, in fact, any personal profit or advantage to which he or she was not legally entitled."  See Ex. A.

69.     The GAB Lawsuit asserts that Baldree fraudulently obtained premium loan proceeds "for its own benefit" by allegedly forging the signature of its client, GAB, on premium finance agreements and seeking amounts in excess of the actual premium charged to GAB.  See Ex. D.

70.     Westport seeks a determination that the 2016 Policy precludes coverage for the GAB Lawsuit based on the Personal Profit Exclusion.

## PRAYER FOR RELIEF

WHEREFORE, Westport demands judgment be entered against Defendant Baldree Insurance Agency as follows:

   a)    determining and declaring that the 2018 and 2019 Policy Applications contain material misrepresentations;

   b)    declare that the 2018 and 2019 Policies are rescinded and void ab initio;

   c)    declare that the 2018 and 2019 Policies are inapplicable to the GAB Lawsuit;

   d)    declaring that the 2016 Policy does not provide coverage for the GAB Lawsuit;

      e)    awarding counsel fees and costs; and

      f)    for such other and further relief as the Court deems just and proper.

Dated: April 13, 2020

          WESTPORT INSURANCE CORPORATION

          By: /s/Robert P. Conlon
             Robert P. Conlon

Robert P. Conlon
WALKER WILCOX MATOUSEK LLP
One North Franklin Street
Suite 3200
Chicago, IL 60606
T: 312-244-6700
F: 312-244-6800
rconlon@walkerwilcox.com

*Attorney for Plaintiff*

17